Good morning, Your Honors. Janet Tong, Federal Defenders of San Diego, on behalf of Mr. Ponce De Leon. Is Mr. Ponce De Leon present? No, he is not present. But he's at liberty? That's correct, Your Honor. Why are you here? We're here because this case is not... Why isn't he here? Excuse me? Why isn't he here? Your Honor, I... We have a question. Why isn't he here? No, I mean, he may not have any interest in the proceeding, and I don't pass any judgment on that. But he's not in custody, is he? No, Your Honor, he's not. Then why are we here? I was about to answer that question, Judge Beyer. Well, we're here to do justice. Go ahead. In addition to doing justice, Your Honor, this case is not moot no matter which of the three... which of the many, actually, lines of mootness law be applied. There are three overarching questions to any line... that apply to any line of mootness law. And if I could just back up for one second. I want to say what did happen here is my client is a United States citizen. That's also undisputed. And he did spend two months in immigration detention, which DHS has no authority to do. And it is an ongoing problem. But he brought a habeas petition. This is a 1983 case. That's correct, Your Honor. He said, unhand me. He's been unhanded. He said unhand me, and he brought the habeas petition because he was in custody at the time. He said unhand me, one. And number two, he said, I'm seeking injunctive relief from the government's unconstitutional detention practice. And that goes to, I think, the three... Well, they can't detain him again on the basis of removal. He's a U.S. citizen. They admit it. Yeah, but they could pick him up in Arizona, couldn't they? Absolutely. They could pick him up under SB 1070. No, no, no, no, no, no, no. The federals can't pick him up under SB 1070. I misspoke. Of course you did. So what is the irremediable situation for which you seek relief under habeas corpus? Mr. Ponce, what has not happened here is the government has not met its burden of showing that the matter is moot, as it pertains to Mr. Ponce's second relief that he has sought, and that's injunctive relief against the government's unconstitutional detention policy. He's a citizen. The government recognizes he's a citizen. The objection is to a policy that declined to recognize him as a citizen. He's got his certificate. He's not here because he doesn't care anymore. He's out from under. The problem you have is that you have other people that care because they're not out from under yet. And the question I think we face is not whether he has a personal interest. It's really hard to find one. But whether you still have an ability to continue the case if he doesn't have a personal interest. I partially agree with that, Judge Clifton. And I agree with the part that we certainly do have an interest in continuing litigation because there are numerous people out there who do maintain Is this a class action? And no, it is not a class action, Your Honor. And if I may finish responding to Judge Clifton's question, I don't agree with the idea that Mr. Ponce does not have a continuing interest. And that's because I do not agree that the granting the issuance of the certificate of citizenship establishes that Mr. Ponce will not be detained again. And I say that for at least two reasons. The first is that because it is mootness that's at stake here, not standing, it's the government's burden to show that there is a link between the issuance of the certificate and the detention actions of the government. And they have not done that here. How do you say standing is not at issue? Standing is always at issue. If a plaintiff doesn't have a personal interest in the case, he's got a standing problem. When I say that, I mean standing versus mootness in terms of who bears the burden of proof. And I say that because twice in the court has said Oh, you do, on standing. You have to have a plaintiff with standing. You need jurisdiction. You bear the burden of proof on standing. Your Honor, there's a difference between standing and mootness, and the Supreme Court addressed that in Friends of the Earth and Adirondack Constructors, and that's been the state of the law for at least a decade. The difference the Supreme Court has pointed to is who bears the burden of proof. And in a standing case, the difference between a standing case and a mootness case is what was the status of the parties at the time of filing. At the time of filing, Mr. Ponce was in custody. That makes this a mootness question, not a standing question. And the Supreme Court has said the party asserting mootness has the burden for mootness questions versus if Mr. Ponce were not in custody at the time he filed, for example, if he waited until he got out and filed a civil action, we would be looking at mootness and we would be bearing the burden of proof. And I've said in my briefs, and I still believe this is true, that that burden actually is a critical difference here because, frankly, I'm not sure we would be making our burden as to Mr. Ponce if we were here on a pure standing, we bear the burden of proof status. But let me just... You plainly wouldn't be, and I think that is your problem because shifting the burden of proof doesn't change the fact that the government now recognizes him as a citizen. And I want to address that because I absolutely disagree with the notion that the issuance of the Certificate of Citizenship establishes anything to do with the government's detention of policy. There are gaps and there is no chain of relevance between that because there's no indication that that issuance of the certificate triggers anything that tells the detention authorities that they may not detain Mr. Ponce. And I don't say that out in the ether. I say that because my office, we are personally aware of cases in which N-600 Certificates of Citizenship have been issued and yet ICE continues to assert detention authority. And it's not just... Those people make better plaintiffs. That may be the case, but the fact of the matter is that the government bears the burden of proof and they have brought... The burden of proof, quite frankly, Your Honor, is the easiest way to decide this case because the government has brought no evidence to show that this is not going to occur. And when you bring zero to the table, that, by definition, fails to meet the burden. What is the evidence that they're going to detain Mr. Ponce? Do you have any declarations by any detention officials that we can't wait until this argument is over? We're going to go out and put this man in a slammer? Your Honor, I think as far as I know, the Friends of the Earth and Adirondack Constructors case law has never been questioned for 10 years and the burden is not on us to present evidence that Mr. Ponce will certainly be detained again. It's on the government to quote the Supreme Court to show that it's absolutely clear that the wrong is not capable of recurrence. And if I may move just a little bit for the moment, we don't have to show that Mr. Ponce is the person who's going to be subjected, potentially subjected to this harm again. That's not necessarily the correct focus. We also, we can show that others... Just play that last two sentences back, would you? Because your voice is a little low for me. I'm sorry, Judge Parkerson. Maybe we can turn it up a little, huh? Can we? I cannot... Your Honor, I'll try to speak a little louder and a little slower. Oh, I know, I did that too. I'm running the mixing machine. One of the critical overarching questions to mootness is who do we look at in terms of the recurrence of harm? And we've talked so far about looking purely at Mr. Ponce and I think we prevail on that question. But our even stronger argument is that we don't... We're not limited to looking just at Mr. Ponce. We can look at other people out there, other citizens and other people with colorable claims of citizenship. And I say that under the line of cases starting with Oregon Advocacy Center and continuing on with United States v. Howard and United States v. Brandau. And in those cases, those are cases that essentially follow an organizational standing type of line of law and especially United States v. Howard, which was the Central District shackling case, were in a very similar procedural posture to that case. And in that case, it was brought by individual defendants, not a class action. And in that case, this court looked outside of just the harm to those particular defendants because those defendants had necessarily endured that harm, which was shackling at their initial appearances, and it was never going to happen to them again because the initial appearances were over. They were done and it was not going to happen again. But this court said that because the defendant's attorney was the federal public defender, which we are today, and because this lawsuit was seeking to vindicate a right that had interest to others than just the people at hand, and most importantly, because the challenge was to an ongoing governmental policy, that the case was not moot. Well, a key point in that is the evading review. What I can't figure out is why there can't be a plaintiff who could bring a proper claim, who does have a personal interest. Why does this necessarily evade review? And Howard, you're talking about shackling during the initial appearance. Once the initial appearance is over, it's done. And so there's simply no way you can review that or undo it. But are we to assume that the government immediately releases anybody in detention who says, I'm a citizen? Oh, if you say you're a citizen, we'll let you go. Has that happened? I don't think so. And that's actually precisely my point, is that the government doesn't do that and they don't have... So why don't you have a plaintiff who hasn't been let go? The evading review is evident from the facts in our specific case where Mr. Ponce spent two months in custody. And the process, what we did is we filed a habeas petition pretty much as soon as we could, as soon as we learned of it and were able to do so. And the district court, after the filing of habeas took, I believe it was five months to even order the government to respond. And in that time, his immigration hearing had taken place and a number of other government lawyers had become involved in the case and that's when they decided to release Mr. Ponce. Now here we are, we're two years after the fact. I mean, if the idea is why can't we... Perhaps there is some unfortunate soul who's a United States citizen and he's in custody for two years to wait out the entire district court and appellate process. May I ask you this? What is the precise relief that you seek from this court? Your Honor, we're looking for reversal of the judgment of the district court which held this case to be moot without any analysis of the controlling case law. And you want us to instruct them to do what? Well, Your Honor... I mean, to instruct them to do what? What I... Well, our position is that the government has actually defaulted on the merits but in the event that Your Honors feel that the government should have an opportunity to respond, the correct... Do you want an injunction? We want injunctive relief. What relief do you wish? From Your Honors, we would... No, no, from the district court. We want an injunction against the government's unconstitutional detention policy. Period. Is that all you want? It's kind of a tough injunction to enforce, huh? What exactly are you looking for in the order? We would like the government... I mean, we said in our position we want them to be enjoined... I would think you would want something like this. And that is if you have a person who's in custody and that person... and there's an immigration hold on that person, huh? And that person says, I am a citizen and here's why I say I'm a citizen. And there's some substance to that allegation. You can back it up. And that... at that time, while a person is in custody, then that could trigger an investigation by the government to see whether this person who has presented some significant evidence of his citizenship, whether it's through birth or through derivative citizenship or whatever, to look into the matter and perhaps even have some sort of a hearing and resolve that issue while that person is still in custody so that when that person finishes his criminal sentence, there isn't this hold against them. You understand what I'm saying? That's right, Your Honor, I do. So you want what you really would like as a fair procedure to be set up so that whether the person is a citizen or not is resolved without having to keep that person in custody. That's what happened here for a couple months, huh? Before the ICE concludes that, yeah, this person is a citizen and we know his brother is, we've looked at it and all that because a lot of these people, a lot of these folks, we've had cases where someone who was brought here as a youngster all of a sudden finds out that he's not a citizen because he wasn't born here and when his parents got their citizenship, they didn't include him in that petition. You know what I'm saying? So he decides he's going to go in the Army and he finds out he's not a citizen, so they won't take him. And there's a lot of kids that are maybe brought here when they're two or three or four months old that as far as they know, they're citizens, but they're not. Is that what you're thinking about? Actually, Judge Pregerson, I think a lot of what you said resonates and it also makes me think that, Judge Bea, you earlier asked me a question that I didn't answer very well and you asked me what are we seeking and I think what Judge Pregerson really brought up is much more than what I said just now, which is just generally an injunction, but it's absolutely right. What we are looking for is we are looking for preliminary procedures to be instituted so that these protections are in place when it's important at the crucial time, which in our view should be prior to the arrest, the initial arrest of a person who has a colorable claim to citizenship and if not that much, then at least very soon after in the nature of a preliminary hearing. Yeah, I mean, there may be an additional arrest on the basis that they're here illegally. You could have something like that, but I'm talking about someone who's been convicted of some other offense and who's in prison and is old on them and I'm just wondering maybe the government would be interested in this too, is to see if the two of you can't work out some procedure, you know, where the government can accommodate this need. It shouldn't be hard to do, should it? Do you like this idea? You got the deal, huh? We would be happy with what we consider to be procedurally adequate. Yeah, let me ask you one. I think mediation is a wonderful idea, but let me ask you a question. No, boss, you don't put up money here. Did you present the judge below with a form of injunction that you wished him to issue? With an actual, a typed-up form injunction? No, Your Honor. Thank you. Okay. We'll hear from the United States of America. Land of the free, home of the brave. Thank you, Your Honor. Sam Bentley of the United States of America. One thing I think is red herring here, there is no detention policy. There's never been any policy that's been presented. And there's only a law that there has to be adequate cause to take someone into custody. That's the law. And that has not even been brought up. Or that is not being argued here today, is the fact that this person, Mr. Ponce de Leon, was a presumed alien, had held himself out as an alien, had come in as an alien on a visitor's visa, and there are even more facts about his holding himself out as an alien and not seeking any kind of certificate of citizenship until 30 years later when he's facing deportation. One of the reasons, maybe you should run on the merits, but the question we're facing now is that, how does he get a day in court or how does somebody in his position get a day in court? Well, they have habeas relief. That's one of the safeguards of somebody who's been arrested or apprehended without adequate cause. Every one of these is case by case. I know that there were... Absolutely. If there was an unlawful arrest, false imprisonment, there are adequate legal remedies. There is no... Well, there is a policy, but it's never been brought up by federal defenders. There's a nationwide policy. It's very liberal toward release of persons with USC claims. If we have a case where that is brought up on the record, we can compare that to what the law is on probable cause or whatever the cause is necessary for apprehension and see if it jives. But that has not been an issue in this case whatsoever. This case has to do with the particular facts of Mr. Ponce de Leon and what the government knew and when it knew it. There's been no allegation of what we knew and when we knew it. I agree entirely with Judge Fragerson that once we know if there is state custody serving time and we encounter this person, they make a USC claim, we immediately do the review. That's what's in the current nationwide policy, which the appellant has not made the court aware of. There are specific procedures very much aware that the stakes are higher when somebody claims, I'm a U.S. citizen, even if they don't have any evidence yet of it to prove that. So there is no ongoing policy. All we have is ongoing law of what the adequate cause is for taking someone into apprehension. And if there's been a violation of that, there are adequate remedies. Well, if you publicize this, how do these people know? A lot of them really don't know where they were born. That's the problem. I had a mother-in-law, she didn't know where she was born. Sometimes she's in Canada, sometimes you find out she was born in Detroit. But she's gone now and she's beyond apprehension. Well, certainly that's a problem. Lack of knowledge is always a problem. Yeah, yeah, yeah. But if someone has that belief, they're in custody and they're getting psychiatric service and they go back into their subconscious, and they think, well, maybe I am a citizen. Right. I grew up with guys that thought they were citizens and found out they weren't when they wanted to go in the Army. I've encountered that in the militaries, too, Your Honor. Then the Army would send them up to Canada so they'd make a legal entry. And then they could go fly B-27s. That works both ways. Yes, it does. It works both ways. Sometimes people think they're citizens, they're not. Sometimes they don't think they are, and they are. Apparently Mr. Ponce de Leon did not know that he was a citizen for a long time. We don't know when he learned that he was a citizen. We know that when he came into the United States, he was presented as an alien because he came in as a visitor. There's no indication of exactly when he found out or thought that he might be a citizen or when he told the government. Is there a procedure set out so that if a person asserts citizenship and has some evidence to back that up, what process the government goes through? Absolutely, Your Honor. That is a nationwide... And the federal defenders are well aware of this written policy. It has come up in one other case that we have. We don't have a bunch of cases. You remember we had this international treaty where when you arrested someone on our soil, you're supposed to notify the Consul General, right? That's correct. And that wasn't done. And I had cases where I dissented on it. Now they do it, right. So there's a lot of things that are supposed to be done that aren't done. That's correct. Mistakes are made all the time, but they're not policy. False arrests are made every day. False imprisonment happens every day, but it's not a policy. Forget about policy. Now they talk about policy in law school. When I was in law school, I never heard anybody say a word about policy. Well, have you talked to... Have you two gotten together on this? Your Honor, in terms of... Recently since this case has been... It's two years old since Mr. Ponce was in custody. So we haven't spoken specifically on this issue. I would like to make two quick points, though. One on the merits and one on mootness. And the government seems to want to speak mostly to merits. And, you know, Mr. Betweze has held up a document, which, if I'm correct, you know, he said, well, plaintiffs didn't bring it into the lawsuit. Well, if I'm correct about what document he's holding up, that was issued a year after this lawsuit was, you know, brought, and after the district court, in fact, made a judgment. So I'm not sure how we were supposed to bring it into something that's no longer in effect. November 2009, Your Honors. And the quick point I'd like to make as to that is that if what needs to be done is litigation needs to be had over the adequacy of this policy, well, then this case should go back on remand. My one quick point I would like to make on mootness is I just wanted to supplement my answer to one of Judge Clifton's questions on the likelihood of re-arrest. And that quick point I'd like to make is the controlling case that this course has to follow as to Mr. Ponce's re-detention and re-arrest is the Demery v. Arpaio case. And that case was even more, far more unlikely than here that recurrence would occur. And that was the Arizona jail cam case where the lawsuit was being brought by people who were detained in Arizona jail. And this court held that because they had been in jail previously that the case was not, I mean, it was still just justiciable because there was a possibility that they would be going back to jail. And I bring that up because I want to emphasize that this case is actually far stronger than that case. Because in that case, as I think Judge Bayh pointed out in that case, those people, in order to make that holding, the court had to assume that people were going to commit crimes again and be arrested, re-arrested at crimes again. And that's not true here. It's not true here because what happens in detention is detention decisions are made based on government officials' subjective belief in a person's alienation to portability. It's not a criminal matter the way it was in Demery v. Arpaio. That's the first point I wanted to make about that case. And the only other point I wanted to make about that case is that was actually a standing case. Those people were out of custody at the time the case was filed. So this is a mootness case, and the burden is much more favorable to us here. And if Demery v. Arpaio is the law, this case is leaps and bounds much more in our favor on mootness. I still don't understand what specific command you would have in an injunction to prevent reoccurrence of this incident. What we sought below specifically is we wanted an injunction against the re-arrest and re-detention of Mr. Ponce under the government's unlawful detention practices and policy. Under the government's unconstitutional policy, but as Judge Clifton indicated, that's a very difficult standard to enforce because you'd have to have a lawsuit as to every one of the detentions before the detention occurred, right? You have to have declaratory relief. Is this detention going to be unconstitutional? Actually, Your Honor, I think to clarify that, what we're seeking is that the government impose a regulatory administrative proceeding. It's not that we rush into court and have that be decided for each person. And that's what I think is missing from the government's current practice and policy is that they don't have something that's akin to... And have you spelled out for the court below exactly what you wish to be in that regulatory proceeding? Our litigation on the merits were nipped in the bud here because the government never responded in any way on the merits to our petition. We haven't litigated that. There hasn't been discovered on that. You sought a preliminary injunction. Excuse me, Your Honor. You sought a preliminary injunction, but you didn't give the text of the preliminary injunction which you sought to the district court at all, right? That may have been a procedural mistake, but what we sought is an injunction. We sought a permanent injunction as well. Well, you know, lawsuits are living things. They change. They grow. They contract. And so what you really would like to see is some administrative procedure how to expeditiously handle a bona fide claim of citizenship when a person is in custody or when a person for a non-immigration offense or when a person is in custody on an immigration offense, supposed immigration offense, so you can resolve these questions. I think that's right. It is essentially a moving target. I mean, as we've talked about today, there's what appears to be a policy change mid-lawsuit while we were waiting for the appeal. Yeah, but that happens. You know, that's good. I think that's right, Your Honor, and I think that is why we need to hash out on remand what the merits truly are. And, you know, I respect the work of the federal defenders. In San Diego, you have a tough job, and you have a, in my experience, you have a firm of bright, enthusiastic lawyers who are really in a hard business down there, and you're trying to keep the system honest. That's what you're trying to do.  All right, so that's important. So maybe the two of you can get together while you're here and go over some of that. You going to leave a copy of that with us? Certainly, Your Honor. And give counsel a copy, too. I have, thank you. And, you know, we can call this policy the Ponce de Leon policy of eternal life and justice. And, Your Honor, just for the record, I would like to say that we don't believe this policy to be adequate constitutionally, and we also do believe that. Well, look it over. You haven't seen it. I actually have seen this before. You know, outside this context, I've seen it before. And, you know, I'm just letting Your Honors know that that's going to be, that is our position on this policy, and it's also our position that this policy can't come in for the purposes of deciding mootness in this case. It can't do what? It can't be considered for the purposes of deciding the mootness issue in this case. Yeah, okay. We got that. All right. And I do thank you for your consideration. Unless Your Honors have any further questions, I would sit down. Well, this was issued by Janet DiAppolitino's office, Homeland Security. Yes, Your Honor. That's who you're with? Yes, Your Honor. You're not with the Justice Department? Oh, I represent the DHS, but I'm with the U.S. Attorney's Office, San Diego. You look like you came from Washington. You've got a nice suit on, tie. Okay, thanks. Matters submitted.
judges: Pregerson, Clifton, Bea